UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NEVELLAND A. THOMPSON,        ) | |
|       Plaintiff,                            ) | |
|                                                 ) | |
|    vs.                                       ) | 1:12-cv-943-TAB-SEB |
|                                                 ) | |
| CAROLYN W. COLVIN                ) | |
| Commissioner of Social Security,   ) | |
|       Defendant.                          ) | |

**ORDER ON PLAINTIFF'S BRIEF IN SUPPORT OF COMPLAINT FOR REVIEW**

**I.     Introduction**

Plaintiff Nevelland Thompson seeks judicial review of Commissioner Carolyn Colvin's decision denying him disability insurance benefits and supplemental social security. Thompson bases this appeal on two contentions: (1) the ALJ's decision failed to properly address conflicting evidence or have a medical expert interpret certain evidence as to whether Thompson met or equaled a listed impairment at step three, and (2) the ALJ inappropriately diminished the severity of Thompson's mental impairments and back pain at step four. For the reasons below, Thompson's brief in support of his appeal [Docket No. 17] is denied and the decision of the Commissioner is affirmed.

**II.    Background**

   *A.     Procedural History*

Thompson filed an application for disability insurance benefits and supplemental social security income alleging disability due to degenerative disc disease, a left-sided hearing loss,

hypertension, pre-diabetes, borderline intellectual functioning, schizoaffective disorder, depression, anxiety, and status post right nephrectomy. After being denied at the initial and reconsideration levels, Thompson filed a request for a hearing. A hearing was held and the ALJ issued a decision denying Thompson benefits. [*Id.*] The Appeals Council upheld the ALJ's decision and denied the request for review. [*Id.*]

      B.    *Medical Evidence*

Thompson contends that he has a variety of medical conditions, including mental and physical impairments. His relevant medical records date from March 2006.[1] Thompson noted some insomnia, irritability and anxiety to his therapist Dr. May at the Midtown Community Mental Health Center, and requested a sleeping pill and anti-anxiety medication. [A.R. at 231.] In April 2006, Thompson reported serious difficulties focusing on tasks but after trying Effexor[2] his mood and concentration were better and he was less irritable and nervous around others. [A.R. at 232.] In February 2007, Thompson again reported much improvement in mood, anxiety, anger and paranoia since restarting Effexor. However, he noted some residual symptoms and requested an increase in his dosage. [A.R. at 244.] Thompson left his job in June 2007, and his mental stability began to suffer. He claims that his nerves were bad and he became very upset. [A.R. at 254.]

Various physicians examined Thompson regularly from 2006 to 2008 for problems with back pain, obesity, diabetes, high blood pressure, and hypercholesterolemia. [A.R. at 264–67.]

---

[1]The record contains medical evidence dated before March 2006, but neither party discusses this evidence. [A.R. at 229.]

[2]Effexor was prescribed to Thompson for depression and anxiety. He was also prescribed Lamictal for depression and to limit impulsivity/irritability. [A.R. at 232.]

In September 2008, Thompson attended a consultative disability examination with social security physician Dr. Poplin. [A.R. at 274.] Dr. Poplin determined that Thompson had bipolar disorder/ADHD, chronic low back pain, and status post right nephrectomy. [A.R. at 277.] A physical residual functional capacity assessment was completed in October 2008 by Dr. Bond. [A.R. at 292.] Thompson had no manipulative, visual, communicative, or environmental limitations at that time. [A.R. at 295–96.]

Also in October 2008, Thompson underwent a mental status examination by social security psychologist Dr. Lynch. [A.R. at 300.] Dr. Lynch diagnosed Thompson with depressive disorder not otherwise specified, generalized anxiety disorder, and assigned a GAF of 53 due to psychological signs and symptoms discovered as a result of testing that included basic spelling and math. [A.R. at 303.]

In November 2008, clinical psychologist Dr. Perry performed an intellectual assessment. [A.R. at 305.] According to Dr. Perry, Thompson obtained a verbal IQ of 69, a performance IQ of 72, and a full scale IQ of 67 on the Wechsler Adult Intelligence Scale. [A.R. at 307.] Dr. Perry also diagnosed Thompson with anxiety disorder NOS, adjustment disorder with mixed anxiety and depressed mood, and a GAF of 65 based on Thompson's adaptive functioning and history of seeking and maintaining vocational supports. [*Id.*]

In December 2008, Dr. Clark completed a psychiatric review technique form for Thompson. [A.R. at 311.] Thompson had only a mild restriction in activities of daily living, and demonstrated moderate difficulties in maintaining social functioning, concentration, persistence, or pace. [A.R. at 321.] Dr. Clark completed a mental residual functional capacity which found Thompson moderately limited in his ability to: (1) understand, remember, and carry out detailed

3

instructions, (2) maintain attention and concentration for extended periods, (3) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (4) interact appropriately with the general public, and (5) get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  [A.R. at 325–26.]

In February 2009, Thompson became eligible for case management at Midtown Community Mental Health Center and was assigned to a depression group.  [A.R. at 427.]  In August 2009, Dr. Boyle documented Thompson's profound hearing loss of 90dB and below in the left ear.  Thompson was unresponsive to any speech discrimination and word recognition, yet his right ear was within normal standards of hearing.  [A.R. at 347.]  In September 2009, Thompson complained to Dr. Perez of daytime sedation, lack of energy, depressed feelings, auditory hallucinations and feelings that someone was following him.  [A.R. at 358.]  Thompson reported to Dr. Perez that he was feeling depressed and having auditory hallucinations again in April 2010.  [A.R. at 351.]  In June 2010, Thompson reported to Dr. Perez that he felt very down and could not shake it off, he still heard voices, and had paranoid ideas.  [A.R. at 349.]  In July 2010, Thompson was seen for follow-up treatment of his schizoaffective disorder.  [A.R. at 348.]  Thompson reported to Dr. Perez that his Citalopram prescription helped him feel more relaxed and less depressed, however, he continues to experience outside stressors that medications alone do not help.  [*Id*.]

    C.    *The ALJ's Decision*

At step one, the ALJ found that Thompson had not engaged in substantial gainful employment since June 4, 2007, his alleged onset date of disability.  [A.R. at 25.]  At step two,

the ALJ found Thompson had severe impairments, but that these impairments were not enough to completely disable Thompson from working. [*Id.*] Specifically, the ALJ determined that Thompson suffered from degenerative disc disease, a left-sided hearing loss, hypertension, pre-diabetes, borderline intellectual functioning, a schizoaffective disorder, depression, and anxiety. [*Id.*] However, at step three, the ALJ found Thompson did not meet or equal any listed impairment. [A.R. at 26.] At step four, relying upon the opinion of Dr. Clark [A.R. at 311–12], the ALJ found that Thompson could perform light unskilled work with a number of physical and mental non-exertional limitations. [A.R. at 28.] At step five, the ALJ found that Thompson could not perform his medium-level past work as a janitor, but could perform other jobs in the national economy such as laundry worker, baker helper, and night office cleaner. [A.R. at 35–36.] Accordingly, the ALJ found that Thompson is not disabled. [*Id.*]

### III. Discussion

*A. Standard*

The social security regulations provide a five-step sequential inquiry to determine whether a plaintiff is disabled: whether the plaintiff (1) is currently unemployed, (2) has a severe impairment, (3) has an impairment that meets or equals one of the impairments listed as disabling in the Commissioner's regulations, (4) is unable to perform his past relevant work, and (5) is unable to perform any other work in the national economy. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512–13 (7th Cir. 2009).

The Court must uphold the ALJ's decision if substantial evidence supports his findings. *Blakes v. Barnhart*, 331 F.3d 565, 568 (7th Cir. 2003). "Although a mere scintilla of proof will not suffice to uphold an ALJ's findings, the substantial evidence standard requires no more than

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." [*Id.*] The ALJ is obligated to consider all relevant medical evidence and cannot simply choose to emphasize facts that support a finding of nondisability while ignoring evidence that points to disability. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). If evidence contradicts the ALJ's conclusions, the ALJ must confront that evidence and explain why it was rejected. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). The ALJ need not mention every piece of evidence, so long as there is a logical link from the evidence to the conclusion. *Denton*, 596 F.3d at 425.

      B.      *Step Three*

Thompson claims that the ALJ erred at step three in finding that Thompson did not meet or medically equal any listed impairments. However, Thompson fails to specify which listing(s) he supposedly met. Despite this shortcoming, Thompson claims that the ALJ's decision failed to properly address conflicting evidence and have a medical expert interpret this evidence as to whether Thompson met or equaled a listed impairment. This evidence includes psychological evaluations from Drs. Lynch and Perry, which implicate mental impairment listings 12.02, 12.03, 12.04, 12.06. [A.R. at 27.]

However, the record contains opinions from other reviewing psychologists, and the ALJ expressly gave significant weight to those opinions. [A.R. at 32.] In December 2008, Dr. Clark indicated that Thompson did not meet or equal any listed mental impairment. [A.R. at 311–12.] Dr. Clark considered the findings of both consultative psychological evaluators Drs. Lynch and Perry. [A.R. at 327.] Although Thompson contends that the ALJ failed to reconcile the somewhat differing opinions of Drs. Lynch and Perry, the ALJ relied most heavily upon the

6

expert opinion of Dr. Clark, which synthesized the examination reports of Drs. Lynch and Perry, along with other available evidence in the record. [A.R. at 32.] In March 2009, Dr. Pressner agreed with the opinions of Dr. Clark in his follow-up evaluation. [A.R. at 340.] The ALJ's reliance upon these expert opinions was sufficient. *See Thorps v. Astrue*, 873 F. Supp. 2d 995, 1003 (N.D. Ill. 2012) (stating that it is the ALJ's responsibility to resolve conflicting evidence that would allow reasonable minds to differ regarding whether plaintiff is disabled).

Thompson also cites SSR 96-6p, arguing that medical reviewers' opinions should be supplemented by additional expert testimony whenever new evidence is added to the record if this new evidence might show a worsened medical condition. However, Thompson fails to cite any pertinent new evidence that was not already considered by Drs. Clark and Pressner. Moreover, Thompson does not otherwise identify any specific listing that the ALJ improperly applied. Therefore, the ALJ's decision at step three is supported by substantial evidence.

  *C.*  *Step Four*

The ALJ determines residual functional capacity at step four. *Villano v. Astrue*, 556 F.3d 558, 561 (7th Cir. 2009). Thompson claims that the ALJ inappropriately diminished the severity of his mental impairments and back pain at step four. In determining a claimant's residual functional capacity, the ALJ follows a two-step process. *Id*. First, the ALJ must determine whether there was an underlying medically determinable physical or mental impairment—i.e., an impairment that could be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce Thompson's pain or other symptoms. *Garza v. Shalala*, 51 F.3d 275, 1 (7th Cir. 1995). Second, once an underlying physical or mental impairment is shown, the ALJ must evaluate the intensity, persistence, and limiting effects of

Thompson's symptoms to determine the extent to which they limited Thompson's functioning. *Id*. When symptoms are not substantiated by objective medical evidence, the ALJ must make a determination on the credibility of such statements based on consideration of the entire case record. *Id*. The burden of proof regarding the nature and extent of Thompson's limitations rests with Thompson. *Thorps v. Astrue*, 873 F. Supp. 2d 995, 1004 (N.D. Ill. 2012).

Thompson asserts that the ALJ failed to properly assess his mental impairments. The ALJ relied upon the expert opinions of Drs. Clark and Pressner at step four. The ALJ also considered the assessments of social security psychologists Drs. Lynch and Perry, giving somewhat greater weight to the more thorough evaluation from Dr. Perry. [A.R. at 31–32, 34.] Under SSA's regulations, expert opinions of medical reviewers are considered substantial evidence if they represent a reasonable reading of all relevant medical evidence. 20 C.F.R. §§ 404.1527(f), 416.927(f) (2010). No treating physician stated that Thompson was more limited than what Dr. Clark considered him to be. [Docket No. 20 at 6.] The expert assessments the ALJ relied on are not contradicted in this record and therefore constitute reasonable assessments of medical evidence regarding Thompson's limitations and abilities. [*Id*.]

Thompson also claims that the ALJ rejected his claims of disabling mental limitations because Thompson sometimes failed to comply with prescribed treatment and medication usage, and also because Dr. Lynch stated that Thompson's prognosis would be better if Thompson complied. [Docket No. 17 at 10.] The ALJ did note that Thompson occasionally failed to comply with prescribed treatment and that Thompson was healthier when compliant. [A.R. at 30–31.] However, the ALJ did not rely upon this consideration as the primary basis for his determination of the severity of Thompson's mental impairments. [A.R. at 32.] Rather, the ALJ

8

relied upon the opinions and findings of reviewing psychologists Drs. Clark and Pressner in his determination of Thompson's mental limitations.[3] [*Id.*] In particular, Dr. Clark noted that Thompson has the mental capacity to understand, remember, and follow simple instructions. [*Id.*] Dr. Clark also reported that Thompson has the capacity to sustain concentration skills to carry out work-like tasks with reasonable pace and persistence (Ex. B9F at 3). [*Id.*] In his follow up evaluation, Dr. Pressner reaffirmed Dr. Clark's findings. [A.R. at 340.] Therefore, the ALJ properly assessed Thompson's mental impairments by relying on these medical opinions.

      Thompson further claims that the ALJ inappropriately diminished the severity of his back pain. However, the ALJ's findings regarding Thompson's physical limitations were based on the opinions of reviewing physicians Drs. Bond and Sands, both of whom believed that Thompson is able to perform medium work with some limitations. [A.R. at 32.] The ALJ limited Thompson to only light work with some non-exertional limitations. [*Id.*] Thompson cites some generalized legal principles regarding proper evaluation of subjective symptoms, yet Thompson fails to reference any evidence showing that the ALJ erred by finding him capable of performing light work. [Docket No. 20 at 7.] Because Thompson fails to meet his burden, the ALJ's determination that Thompson is capable of light work despite his back pain is upheld.

---

[3] The ALJ did not need to seek out additional evidence because the medical opinions of Drs. Lynch, Perry, Clark, and Pressner sufficiently addressed Thompson's impairments.

**IV.     Conclusion**

For the reasons above, Thompson's brief in support of complaint for review [Docket No. 17] is denied, and the decision of the Commissioner is affirmed. Judgment shall issue accordingly.

DATED: 7/23/2013

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov